**United States District Court**
For the Northern District of California

1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7         FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   SHARON CARTER,                    No C 05-02486 VRW

10          Plaintiff,

11      v

12   JO ANNE B BARNHART, Commissioner    ORDER
     of Social Security,

13          Defendant.
     _____/

14

15      Plaintiff Sharon A Carter brings this action under 42 USC

16   § 405(g) to obtain judicial review of the Social Security

17   Administration's (SSA's) final decision denying disability benefits

18   under Title II of the Social Security Act (the Act).   Now before

19   the court are the parties' cross-motions for summary judgment.   Doc

20   #6; Doc #7.   For the reasons stated herein, the court DENIES

21   plaintiff's motion and GRANTS the government's motion.

22

23                          I

24                          A

25      Plaintiff was born on January 10, 1951, completed high

26   school and one semester of college, then began her career as a

27   billing and invoice administrator at Dreisbach Enterprises in

28   Oakland, California in November 1979.   AR 60, 216.   In September

United States District Court

For the Northern District of California

1989 plaintiff began work as a billing and computer technician at Thunder Road Adolescent Treatment Center, also in Oakland, where she remained until the onset of her alleged disability.  AR 95.

Plaintiff coaches a children's track team nine months of the year and claims that her initial injury took place in 1996 during a track meet.  AR 218, 231-32, 259.  Plaintiff testified that two car accidents, one in September 2000, the other in May 2001, exacerbated the 1996 injury and caused her to become disabled as of June 23, 2000 at the age of 49.  AR 42, 218, 259.  Plaintiff claims these injuries make it impossible to perform basic job functions which require her to sit for eight to ten hours per day and lift/carry up to ten pounds frequently.  AR 60, 77.

Plaintiff received treatment for her injuries by Raymond W Yu, MD, an internist at Kaiser Permanente in Oakland, and Tipkins Hood, MD, a private orthopedic surgeon, also in Oakland.  AR 61. Medical records from plaintiff's treating physicians date from April 1997 through August 2004.  AR 116-32, 133-69, 191-97, 204-06.

Plaintiff testified that she began seeing Dr Yu in February 1996 (following her initial injury) for treatment of back pain, sciatica and high blood pressure.  AR 61.  The record, however, only contains Kaiser records from April 1997 through August 2004.  See AR 133-69, 191-203. These records indicate plaintiff's hypertension was controlled with Atenol, and that her chief complaint was back pain.  Id.

The Kaiser records show an April 1997 MRI of plaintiff's lumbar spine indicating "small broad-based central, left paramedian and lateral disc protrusion at the L5-S1 level, resulting in mild left L5 neutral foraninal compromise, mild flattening of the

**United States District Court**
For the Northern District of California

ventral thecal sac and impingement on the left * * * S1 nerve-root axillae * * *," as well as "[g]rade I L3-4 and L4-5 spondylolistheses with evidence of minor bilateral facet arthropathy * * *."  AR 131-32.  The records further indicate that plaintiff underwent approximately five physical therapy sessions between May and July 1999 to treat sciatica, decrease pain, and improve range of motion and endurance.  AR 161-62.

The remaining Kaiser records show almost bi-monthly office visits to Dr Yu from July 1999 through May 2001.  See AR 133-69, 191-203.  Dr Yu's chart notes indicate plaintiff's sciatica was treated with 600-800 milligrams of Motrin and a modified work schedule consisting of alternating six hours of work per day with eight hours per day from approximately October 1999 through April 2000.  Id.  Kaiser records from September 2001 through September 2003 indicate "persistent" left sciatica treated with 600 milligrams of Motrin twice a day.  AR 350-55.  These records further indicate Dr Yu discussed the option of additional physical therapy, which plaintiff declined.  Id.  Records from December 2003 through July 2004 indicate persistent left sciatica as well as a presentation of right sciatica.  AR 394-97.  Finally, in an August 2004 MRI the interpreting radiologist indicated nerve root encroachment could be "exaggerated when patient stands," but the overall result was a "mild to moderate diffuse disc bulge at L5-S1" with "no significant nerve root encroachment."  AR 409.

Plaintiff claims she began seeing Dr Hood for acupuncture treatment of her back injuries in October 1999.  AR 61.  While the record purportedly includes Dr Hood's "[m]edical records covering the period from April 29, 1997 to March 5, 2001,"  upon

United States District Court

For the Northern District of California

examination, the records show plaintiff's first treatment with Dr Hood as April 11, 2000.  See AR 3, 116-32, 204-06.  Dr Hood's records indicate plaintiff received a series of fourteen thirty-minute "electro acupuncture treatments" from April 2000 through February 2001 (AR 119-21, 126, 128) and that she was first placed on "disability" by Dr Hood in June 2000 due to "lower back pain." AR 127.  Further examination shows extension of plaintiff's "disability" through July 2001 due to "HNP L-4-5," "HNP * * * L5-S1," and "herniated disk disease in lower back."  AR 123, 125.

Although Dr Hood placed plaintiff on "disability," the record is, with one exception (discussed <u>infra</u>), devoid of records of physical examinations, see AR 116-32, and consists principally of acupuncture records concluding plaintiff "tolerated [the] procedure[s] well" and "disability slips" stating plaintiff was under the professional care of Dr Hood and had been "placed on disability."  Id.  The only report of a medical exam is dated May 29, 2001.  AR 411.  In this report, Dr Hood indicates plaintiff came to his office for evaluation and treatment following her May 2001 car accident.  Id.  The report indicates a positive straight leg raising test "at 60 degrees for back pain, but no sciatica." Id.

The administrative record also contains reports of several consultative exams performed at the SSA's request.  See AR 170-71, 198-203, 339-48, 356-67, 398-408, 413-18. Medical records from consulting physicians date from June 2001, just after plaintiff's initial application, through her final consultative exam in November 2004.  Id.

\\

United States District Court

For the Northern District of California

Prior to the SSA's initial decision, plaintiff underwent two consultative exams, one by an internist, the other by an orthopedic surgeon. AR 170-71, 198-99. Burton Brody, MD performed an internal medicine exam on June 20, 2001, and Michael Y Han, MD conducted an orthopedic evaluation on June 8, 2002. Id. Dr Brody's exam demonstrated that plaintiff had "some degree of age-consistent degenerative changes in her lumbar spine" but consistent objective findings were minimal and plaintiff had "no apparent limitations." AR 171. Dr Han's thoracolumbar and lumbosacral spine exam, by contrast, demonstrated a "significantly decreased [range of motion] of the lumbosacral spine * * *, as well as minimal to no extension with pain." AR 198-99. Dr Han recommended restricting plaintiff's lifting and carrying to ten pounds frequently and restricting her sitting to less than six hours per day over an eight-hour day with periodic alternating of sitting and standing. AR 199.

On November 3, 2003, Vicky Campagna, PhD, performed a psychological evaluation and found plaintiff's "ability to function in a work-related setting" to be unimpaired. AR 356-60. A subsequent evaluation by Dr Campagna about one year later resulted in similar findings. AR 425-29.

On November 17, 2003, John Chu, MD, performed a complete orthopedic evaluation. AR 361-66. Dr Chu diagnosed plaintiff as having "low back pain with left lower extremity radicular symptoms." AR 365. Dr Chu noted a subjective "decreased sensation to monofilament testing of 5%," found plaintiff able to lift up to twenty-five pounds occasionally and to "stand, walk and sit for 6 hours in an 8-hour workday." Id. Dr Chu noted plaintiff "must be

United States District Court

For the Northern District of California

allowed to periodically alternate [between] sitting and standing to relieve pain and discomfort."  Id.  Dr Chu then ordered x-rays of plaintiff's lumbar spine, which demonstrated "no compression injury or disc narrowing" and resulted in an overall "negative examination."  AR 368.

On June 20, 2004, Rajeswari Kumar, MD, performed plaintiff's third complete orthopedic evaluation.  AR 339-43.  Dr Kumar found plaintiff's lumbar spine range of motion to be restricted but found no clinical evidence of "radiculopathy" (i e sciatica).  AR 343.  Dr Kumar further indicated plaintiff was able to lift "10 pounds frequently" and sit for an unlimited amount of time.  Id.

Finally, on November 20, 2004, Adi Klein, MD, performed a comprehensive internal medicine evaluation.  AR 413-18.  Dr Klein's overall impression was "back pain due to disc disease by records noting MRI L5, S1 disc disease with possible L5 impingement."  AR 417.  Dr Klein noted plaintiff appeared to be "resisting the examination" and while results were inconsistent, plaintiff was "able to change position and get on and off [the] examining table without difficulty."  Id.

B

On January 12, 2001, plaintiff filed an application for SSA benefits alleging disability due to back impairment, sciatica and high blood pressure.  AR 27, 29, 59, 256.  The SSA denied plaintiff's application both initially and upon reconsideration.  AR 29, 35.  Plaintiff filed a timely request for a hearing before an administrative law judge (ALJ) and on May 7, 2002, plaintiff,

6

United States District Court

For the Northern District of California

1   unrepresented by counsel, plaintiff's witness and co-worker Valerie
2   Bolden and a vocational expert (VE) appeared before the ALJ.  AR
3   30-40; AR 212.

4          Plaintiff's testimony included details about her hobbies,
5   injury, medical treatment and employment history.  AR 216-35.
6   Plaintiff explained that constant pain in her lower back and left
7   leg kept her from working, that she tried to "deal with the pain"
8   instead of taking her medication and for that reason, her pain's
9   intensity varied.  AR 224.  Plaintiff's witness testified that she
10  worked with plaintiff at Thunder Road for five years and witnessed
11  plaintiff's difficulty with "getting up and down" from her desk.
12  AR 236.  The VE testified that plaintiff's past work was "primarily
13  sedentary" and "on the cusp between skilled and semi-skilled."  AR
14  238.  And, in answering a series of hypothetical questions from the
15  ALJ, the VE opined that a person similarly situated to plaintiff
16  would not be able to do her past relevant work, but could work as a
17  cashier or survey worker.  AR 246.

18         On September 24, 2002 the ALJ issued an unfavorable
19  decision finding that while plaintiff suffered from degenerative
20  disc disease which significantly limited her ability to perform
21  basic work activities, plaintiff's impairments did not "meet or
22  equal the criteria set forth in any applicable section of the
23  Listing of Impairments, 20 CFR Part 404, Subpart P, Appendix 1."
24  AR 16.  Specifically, the ALJ found plaintiff's medical records
25  from Kaiser to be void of evidence of "nerve root compression with
26  neuro-anatomic distribution of pain, limitation of motion of the
27  \\
28  \\

United States District Court

For the Northern District of California

spine, motor loss, sensory or reflex loss and positive straight-leg raising test as required by Section 1.04A for a Listing level disorder of the spine."  AR 13.

The ALJ found plaintiff had the residual functional capacity (RFC) "to perform a limited range of light work, as defined at 20 CFR § 404.1567(b), with sitting for 1 hour at a time up to 6 hours per day, standing for 45 minutes at a time up to 8 hours per day, [with] occasional walking, bending, stooping, kneeling, crouching, crawling and squatting," and that while plaintiff was precluded from performing her past relevant work she could perform work "existing in significant numbers in the local and national economies * * *."  AR 17.  The ALJ based his decision on the fact that all but one of plaintiff's physical examinations at Kaiser were negative, she was only placed on a limited work schedule by her treating physician, and it was not until she saw Dr Hood that she was placed on full work restriction.  AR 14.

The ALJ rejected Dr Hood's findings as "not supported by medically acceptable clinical and laboratory diagnostic techniques" and inconsistent with that of Dr Yu and the consultative exams of Dr Brody and Dr Han.  AR 14-15.  The ALJ discredited plaintiff's subjective statements of pain which allegedly precluded her from working since, despite her complaints of severe pain, she underwent a minimal treatment regimen of Motrin, physical therapy and acupuncture and reported an "ability to perform some household chores" and to "coach[] a children's track team several times each week * * *."  AR 15, 17.  Further, it was not until Dr Yu "suggested that [plaintiff] could return to work on an unlimited basis" that she "sought out * * * Dr Hood, who declared her unable

to work," but without reporting objective findings in support of his "proscription against all work."  AR 15.

The ALJ's decision became final on February 7, 2003 when the Appeals Council denied review.  AR 5.  Plaintiff then filed a timely action for judicial review pursuant to 42 USC § 405(g) (See Carter v Barnhart, No C 03-1518 CRB) and a new claim for benefits dated September 10, 2003 (not included in current record).  Upon judicial review, the district court determined that while the ALJ found plaintiff had the RFC to perform a "limited range of light work," "the evidence only indicated that [plaintiff] could perform work at the sedentary level."  AR 281.  Accordingly, the court concluded that the ALJ's initial finding was not supported by substantial evidence and remanded the case for "further proceedings to determine if plaintiff's past work experience [could be] transferable for sedentary work consistent with her limitations."  Id at 281, 282.

Pursuant to the district court's order, the Appeals Council vacated the SSA's February 2003 decision and remanded the case to an ALJ for further proceedings.  AR 265.  The Council specifically ordered the ALJ to "provide [plaintiff] an opportunity to appear at a hearing [and] develop the record * * *."  Id.  In addition, the Council rendered plaintiff's September 10, 2003 claim duplicative, "associated" the two claims, and ordered the ALJ to issue a new decision based on the newly associated claims.  AR 266.  On October 7, 2004, plaintiff — this time represented by counsel — and a VE appeared before the same ALJ for the new hearing.  AR 434.

At the second hearing, plaintiff testified that she continued to experience constant pain in her left leg.  AR 438-49.

United States District Court

For the Northern District of California

1   Plaintiff also explained that while Dr Yu "recommended physical

2   therapy at Kaiser" it "is not the type of physical therapy place

3   that can help my back" and she could not afford outside therapy.

4   AR 442.  Plaintiff went on to discuss her blood pressure, eyesight

5   and depression, which she had included in her second application.

6   AR 444.  The VE testified that a hypothetical person similarly

7   situated to plaintiff could not perform her past relevant work, yet

8   could work as a self-service parking lot attendant or self-service

9   gas station cashier.  AR 458-59.

10          Pursuant to the remand order, the ALJ determined that 20

11  CFR §§ 404.983, 404.977 and § I-2-8-18 of the Hearings, Appeals and

12  Litigation Law Manual (HALLEX) required him to conduct a new five-

13  step sequential analysis to determine plaintiff's disability

14  eligibility.  AR at 258-263.

15          20 CFR § 404.983 provides:

16          When a [f]ederal court remands a case to the
            Commissioner for further consideration, the
17          Appeals Council * * * may remand the case to an
            [ALJ] * * *.  If the case is remanded by the
18          Appeals Council, the procedures explained in §
            404.977 will be followed.  Any issues relating
19          to [a] claim may be considered by the [ALJ]
            whether or not they were raised in the
20          administrative proceedings leading to the final
            decision in [that] case.

21

22  20 CFR § 404.983.  20 CFR § 404.977(b) allows the ALJ to "take any

23  additional action that is not inconsistent with the Appeals

24  Council's remand order," and under HALLEX § I-2-8-18 (ALJ Decisions

25  in Court Remand Cases), "[w]hen the Appeals Council vacates a final

26  decision of the Commissioner, the ALJ must consider all pertinent

27  issues de novo."  Accordingly, the ALJ examined "all of the

28  evidence of record including the new medical evidence submitted

10

United States District Court

For the Northern District of California

since the date of [his] September 24, 2002 decision * * *," AR 258, to determine whether plaintiff's alleged disability based on "herniated disk disease with back and leg pain, hypertension, retinitis pigmentosa, depression and equilibrium problems" qualified her for disability benefits.  AR 257.

The ALJ determined plaintiff's allegations of disabling hypertension and retinitis pigmentosa were not supported by the record, had no more than a "minimal effect" and were not severe. AR 257.  While the ALJ did not specifically address plaintiff's allegations of equilibrium problems, he did find she suffered from "medically determinable impairments diagnosed as degenerative disc disease and an adjustment disorder" which "significantly limit her ability to perform basic work activities, as set forth at 20 CFR § 404.1512, and must be deemed to be 'severe.'"  AR 258.  But the ALJ determined that the evidence "fail[ed] to describe the degree of functional limitation necessary to satisfy the 'B' criteria of Section 12.04 for a Listing level affective disorder" and that plaintiff was at all relevant times able to perform a wide range of medium work.  AR 259.  As with his September 2002 decision, the ALJ based this finding on medical evidence, plaintiff's statements and his own observations.  AR 259, 262.

First, the ALJ found plaintiff's treatment records from Kaiser to be "consistently negative save for intermittent findings of positive straight leg raising on the left."  AR 259.  The ALJ again considered records from Dr Hood, which indicated plaintiff "could not work at all," but rejected this opinion as "inconsistent with other substantial evidence * * * including the opinion of Dr Yu * * * and the opinion of Dr Brody, who * * * documented his

United States District Court

For the Northern District of California

benign physical examination findings, and noted no deterioration in [plaintiff's] condition over time."  AR 260.  The ALJ's rejection of Dr Hood's finding was also based on the lack of "physical examination findings to corroborate [his] conclusion."  Id.

Second, the ALJ found determinative a series of contradictory statements and actions on plaintiff's part.  AR 262. Although plaintiff reported "disabling symptoms," she also reported an ability to "perform a variety of household chores."  Id. Further, while plaintiff reported difficulty walking without pain, "she also stated that she has to take a walk 3-4 times each day to relieve her * * * pain."  Id.  In addition, while plaintiff alleged her inability to perform any work, she "reported that she is the chairperson and owner of a children's track team[,] and in that role she coaches the athletes several times each week * * *, attends track meets, works on a computer and handles all of the paperwork."  Id.  Finally, the ALJ asserted "[t]he lack of more than very conservative treatment for [plaintiff's] allegedly disabling back and leg pain, and the lack of any ongoing treatment for her allegedly disabling depression," as well as inconsistencies of plaintiff's "presentation and behavior during examinations and at the hearing" cast doubt on her allegations and "suggest some exaggeration of her symptoms."  Id.

Based on the evidence, the ALJ issued a second unfavorable decision, this time finding that plaintiff had the RFC to perform a "wide range of medium work."  AR at 264.  Once the second decision became final, plaintiff filed this timely action for judicial review under § 405(g), asserting that the ALJ "committed legal error by deviating from the court's [remand]

order" and conducting a second review of plaintiff's alleged disability.  Doc #6.

## II

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 USC § 405(g).  Accordingly, a district court may overturn a decision to deny benefits only if the decision is (1) not supported by substantial evidence or (2) if the decision is based on legal error.  Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995) (citing Magallanes v Bowen, 881 F2d 747, 750 (9th Cir 1989)).  When a reviewing court finds the ALJ's decision is supported by substantial evidence, a finding that the ALJ committed legal error will mandate the decision be set aside.  Benitez v Califano, 573 F2d 653, 655 (9th Cir 1978); Flake v Gardner, 399 F 2d 532, 540 (9th Cir 1968).

## A

Plaintiff contends that on remand from the district court, the ALJ committed legal error in conducting a full reconsideration of her disability status and that such error warrants reversal.  Doc #6 at 10.  Defendant, however, asserts the ALJ's decision was "consistent with the [d]istrict [c]ourt's [o]rder of [r]emand" as well as SSA regulations.  Doc #7 at 2.  For the reasons stated below, the court finds the ALJ did not commit legal error warranting reversal.

Plaintiff points to Sullivan v Hudson, 490 US 877, 886 (1989), in which the Supreme Court ruled "[d]eviation from the

United States District Court

For the Northern District of California

13

**United States District Court**

For the Northern District of California

court's remand order in [a] subsequent administrative proceeding[]
is itself legal error, subject to reversal on further judicial
review."  While the <u>Sullivan</u> court did not identify the particular
legal doctrines in support of its conclusion, plaintiff points to
two: (1) the law of the case and (2) the rule of mandate.  Doc #6
at 10.  "Under the 'law of the case' doctrine, a 'court is
generally precluded from reconsidering an issue that has already
been decided by * * * a higher court in the identical case.'"
<u>United States v Alexander</u>, 106 F 3d 874, 876 (9th Cir 1997) (citing
<u>Thomas v Bible</u>, 983 F 2d 152, 154 (9th Cir 1993) (cert denied)).
Under the rule of mandate, "lower courts are obliged to execute the
terms of a mandate" but are free to do "'anything not foreclosed by
the mandate.'"  <u>United States v Kellington</u>, 217 F 3d 1084, 1092
(9th Cir 2000) (citing <u>Herrington v County of Sonoma</u>, 12 F 3d 901,
904 (9th Cir 1993)).  In certain situations "'an order issued after
remand may deviate from the mandate * * * if it is not counter to
the spirit of the circuit court's decision * * *.'"  Id at 1093
(citing <u>Lindy Pen Co v Bic Pen Corp</u>, 982 F 2d 1400, 1404 (9th Cir
1993)).

Defendant contends, and plaintiff concedes, that there is
no published opinion of the Ninth Circuit applying either doctrine
under the circumstances.  Doc #7 at 4; Doc #6 at 10.  Plaintiff,
however, cites a number of cases from other circuits applying one
or both of these doctrines in cases remanded to an ALJ by a federal
court.  See <u>Key v Sullivan</u>, 925 F 2d 1056, 1060 (7th Cir 1991)
(applying the law of the case doctrine); <u>Wilder v Apfel</u>, 153 F 3d
799, 803 (7th Cir 1998) (applying the law of the case doctrine);
<u>Brachtel v Apfel</u>, 132 F 3d 417, 419 (8th Cir 1997) (acknowledging

United States District Court

For the Northern District of California

the law of the case doctrine applies to administrative agencies on remand); Gribsby v Barnhart, 294 F 3d 1215, 1218 (10th Cir 2002) (applying the law of the case and the rule of mandate to judicial review of administrative decisions).  Doc #6 at 10.  Plaintiff also cites Ischay v Barnhart, 383 F Supp 2d 1199 (C D Cal 2005), as an example of a federal district court which, in the absence of Ninth Circuit precedent, has found "the doctrine of the law of the case and the rule of mandate [applicable] to matters remanded to [an] [a]gency for further proceedings."  Ischay, 383 F Supp at 1216.  In support of its finding, the Ischay court relied on cases from other circuits.  Id.

Plaintiff argues that when the ALJ "abandoned his original [finding of plaintiff's RFC] * * *" and found plaintiff capable of "perform[ing] medium work * * *,"  he ignored the "binding law of the case" (that plaintiff was limited to sedentary work) and "failed to comply with the [c]ourt's mandate * * *.  Doc #6 at 11-12.  Defendant, however, contends that the ALJ's decision to "consider all of the issues related to [p]laintiff's claim for disability benefits, including those considered at the time of the original decision" as well as "new material evidence submitted since the[n] * * *," was a "reasonable interpretation of the [d]istrict [c]ourt's order" and was consistent with "Social Security regulations * * *."  Doc #7 at 3.  Defendant is correct for two reasons.

First, plaintiff's argument ignores the fact that determinations of disability, even after approval, are subject to periodic review.  20 CFR § 404.1590.  Not only did two years pass between the ALJ's initial determination and his new finding, but

new medical evidence, including additional visits to Dr Yu as well as two consultative psychological exams and three consultative physical exams, were added to the record.  See AR 339-43, 350-66, 394-97, 409, 413-18, 425-29. Accordingly, review of plaintiff's disability status would have been timely in any event.

Second, the ALJ's actions were supported by the controlling federal regulations: 20 CFR §§ 404.983, 404.977 and 404.1520.  Under 20 CFR § 404.983 (discussed supra), upon remand, "[a]ny issues relating to [a] claim may be considered by the [ALJ] whether or not they were raised in the administrative proceedings leading to the final decision in [that] case."  Under 20 CFR § 404.977 (also discussed supra), the ALJ "may take any additional action that is not inconsistent with the Appeals Council's remand order."  20 CFR § 404-977(b).  20 CFR § 404.1520(a)(3) provides that "all evidence in [the claimant's] case record" will be considered when "mak[ing] a determination or decision whether [the claimant] is disabled."  These sections, taken together, support the proposition that the ALJ has authority to reconsider plaintiff's disability upon remand as long as such reconsideration is consistent with the remand order.

In its remand order, the court found there were "outstanding issues" which precluded the court from "making a disability determination on the merits * * *."  AR 282. Plaintiff's reliance on specific language directing "further proceedings to determine if plaintiff's past work experience is transferable for sedentary work consistent with her limitations" is misplaced.  Doc #6 at 9.  Again, plaintiff is disregarding the ALJ's broad direction to make disability determinations on the

16

United States District Court

For the Northern District of California

1  merits.  AR 282.  As defendant points out, "[t]he ALJ reasonably

2  determined that, ultimately, the court's remand order required him

3  to determine whether [p]laintiff was disabled at any time since her

4  alleged disability onset date."  Doc #7 at 5.

5      Since the ALJ's actions were both consistent with the

6  remand order and the controlling federal regulations, there was no

7  legal error warranting reversal.  For these reasons, and because,

8  for the purposes of this appeal, plaintiff concedes that she was

9  not disabled prior to her fiftieth birthday (Doc #6 at 13), the

10  sole issue to be determined is whether the ALJ's March 17, 2005

11  finding that plaintiff is capable of performing a wide range of

12  medium work is supported by substantial evidence.

13

14                              B

15      In his March 17, 2005 decision, the ALJ found plaintiff

16  not disabled under the Act.  AR 264.  This decision is supported by

17  substantial evidence.

18      Disability under the Act is defined as "the inability to

19  do any substantial gainful activity by reason of any medically

20  determinable physical or mental impairment * * * which has lasted

21  or can be expected to last for a continuous period of not less than

22  12 months."  20 CFR § 404.1505(a).  To determine whether a claimant

23  is disabled, the ALJ conducts the five-step sequential analysis set

24  forth in 20 CFR § 404.1520(a)(4)(i)-(v).  Step one considers

25  whether the claimant is currently employed in substantial gainful

26  activity.  If not, the second step asks whether the claimant has a

27  severe impairment.  If the claimant's impairment or combination of

28  impairments is deemed "severe," step three determines whether the

United States District Court

For the Northern District of California

condition meets or equals the conditions set forth in the Listing

of Impairments in Part 404 of the Regulations, Subpart P, Appendix

1.  If the claimant does not have a "listing level" impairment,

step four asks whether the claimant can perform her past relevant

work.  If not, step five considers whether the claimant has the

ability to perform other work which exists in substantial numbers

in the national economy.  The ability to perform other work

mandates a finding of not disabled.  42 USC § 1382c(a)(3)(B); 20

CFR §§ 404.1520(b)-(g).

When evaluating a mental impairment, the ALJ employs a

"special technique" during his analysis.  20 CFR § 404.1520a(a).

Use of the "technique" must be documented in the ALJ's decision and

"include a specific finding as to the degree of [plaintiff's]

limitation * * *" in (1)"[a]ctivities of daily living," (2) "social

functioning," (3) "concentration, persistence, or pace" and (4)

"episodes of decompensation." 20 CFR §§ 404.1520a(c)(3),

404.1520a(e).

Plaintiff contends the ALJ's finding that plaintiff was

capable of performing a wide range of medium work is not supported

by substantial evidence in that the ALJ "substituted his own

judgment for the opinions of the treating and examining

physicians."  Doc #6 at 10.  Defendant asserts the finding is

substantially supported by "[n]ew evidence, including medical

information" which confirmed that plaintiff was not credible and

that she was in fact capable of performing a wide range of medium

work.  Doc #7 at 5-6.

In determining whether an ALJ's decision is supported by

substantial evidence, the reviewing court considers the

United States District Court

For the Northern District of California

administrative record as a whole.  <u>Andrews</u>, 53 F3d at 1039.
Substantial evidence is "more than a mere scintilla but less than a
preponderance; it is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.  Id at 1039-40.
The ALJ's decision must be upheld where "the evidence is
susceptible to more than one rational interpretation."  Id.  It is
not within the jurisdiction of the court to determine credibility
or to resolve conflicting medical testimony or ambiguities in the
record.  Id.

        While neither party dedicates more than a few sentences
to the ALJ's analysis in their briefs, See Doc #6; Doc #7, it is
clear that steps one and two are not at issue.  There is ample
evidence (in the form of testimony and medical findings) in the
record to support the ALJ's determinations that plaintiff has not
engaged in any substantial gainful activity since June 23, 2000 and
that plaintiff suffers from "severe" impairments (degenerative disc
disease and adjustment disorder) which significantly limit her
ability to perform basic work activities.  AR 258.  Accordingly,
the court will limit its discussion to steps three through five of
the ALJ's analysis.

                          1

        Step three requires the ALJ to analyze a claimant's
"severe" impairments and consider whether the impairments meet the
"listing level" criteria set forth in 20 CFR Part 404, Subpart P,
Appendix 1.  Here, the ALJ found neither plaintiff's degenerative
disc disease nor her adjustment disorder to be "listing level."
Both findings are supported by substantial evidence.
\\

19

United States District Court

For the Northern District of California

Section 1.04(A) of the Appendix sets forth requirements for a "listing level" spine disorder and requires evidence of:

> Nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and * * * positive straight-leg raising test[s].

20 CFR Part 404, Subpart P, Appendix 1 § 1.04(A).  In conducting his analysis, the ALJ found plaintiff's most recent medical records relating to her disc disease failed to meet listing level criteria. While plaintiff's 1997 Kaiser MRI described "impingement on * * * [plaintiff's] nerve-root axillae * * *," AR 132, her August 2004 MRI indicated a lack of "significant nerve root encroachment." AR 409.  While a 2002 examination by consulting physician Dr Han showed a "significantly decreased [range of motion] of the lumbosacral spine," AR 198, plaintiff's more recent Kaiser records consistently indicated "good strength" and a lack of sensory loss. AR 350-54; AR 394-96.  Finally, while plaintiff's Kaiser records indicated positive straight-leg raising tests as recently as April 2004, See AR 394-96, both of plaintiff's 2004 consultative exams noted "inconsistent" results.  AR 341, 417.  Despite identification of positive straight-leg raising tests, plaintiff's August 2004 MRI and recent Kaiser records represent the substantial evidence necessary to uphold the finding that plaintiff's medical records did not meet the "listing level" criteria set forth in 20 CFR Part 404, Subpart P, Appendix 1 § 1.04(A).

In order to be considered "listing level," an adjustment disorder must meet the criteria set forth in § 12.04 of the

Appendix.  An ALJ's complete analysis of plaintiff's mental impairment under § 12.04, if properly documented in his decision, constitutes fulfillment of 20 CFR § 404.1520a's requirement to apply the "special technique" (see <u>supra</u>).  Here, the ALJ found that plaintiff's medical records failed to describe the degree of functional limitation necessitated by § 12.04.  AR 259.  This finding is supported by substantial evidence and was properly documented to fulfill the § 404.1520a requirement.

Under § 12.04, if "a disturbance of mood, accompanied by a full or partial manic or depressive syndrome" is not a documented "chronic affective disorder of at least 2 years" there must be evidence of:

> Medically documented persistence, either continuous or intermittent of * * * depressive syndrome * * * resulting in at least two of the following: (1) [m]arked restriction of activities of daily living, (2) [m]arked difficulties in maintaining social functioning, (3) [m]arked difficulties in maintaining concentration, persistence, or pace or (4) [r]epeated episodes of decompensation, each of extended duration.

20 CFR Part 404, Subpart P, Appendix 1 § 12.04.  While there is no evidence that plaintiff's adjustment disorder is a "chronic affective disorder of at least 2 years," Kaiser records support a finding that plaintiff suffers from depressive syndrome.  AR 354; AR 395-96.  Accordingly, in order to be "listing level" the disorder must meet two of the four criteria set forth in § 12.04 (see <u>supra</u>).  The ALJ's finding that plaintiff's impairment does not meet the requisite criteria is supported by substantial evidence.

\\

United States District Court

For the Northern District of California

1    The ALJ found that plaintiff's adjustment disorder
2    created "no more than a mild restriction of activities of daily
3    living" and that there were no "[marked] difficulties in
4    maintaining social functioning." AR 259.  The ALJ based these
5    findings on plaintiff's "reported [] ability to perform a variety
6    of household chores[,] [] [to] care for her son" and to "get along
7    well with friends and neighbors * * *." AR 259.  The record
8    supports these findings.  In her 2004 hearing, plaintiff stated she
9    wakes up by six-thirty in the morning, takes a shower, a short
10   walk, and does light housekeeping.  AR 259; AR 445-47.  Plaintiff
11   also stated she does not sleep during the day and that, for the
12   most part, she gets along well with family and friends.  AR 447-48.
13   Additionally, Dr Campagna's November 2004 psychological evaluation
14   indicates that while plaintiff reported "poor" sleep and appetite,
15   she "volunteer[s] with [a] track team, work[s] on her computer * *
16   * tak[es] short walks * * *" and has "good to excellent
17   interpersonal relationships." AR 426.  The ALJ also found that
18   plaintiff's only psychological exams show no more than "mild
19   difficulties in maintaining concentration, persistence or pace, and
20   there is no evidence of episodes of decompensation * * *." AR 259.
21   An examination of the record supports this finding.

22       Since the ALJ's findings regarding the four criteria in §
23   12.04 are substantially supported by the record and because the ALJ
24   documented his complete analysis as required by § 404.1520a, it was
25   proper for the ALJ to move on to steps four and five of the
26   sequential analysis.
27   \\
28   \\

United States District Court
For the Northern District of California

2

Under step four, when a claimant's impairments cannot be considered "listing level," the ALJ must assess the claimant's RFC to determine the most work she "can still do despite * * * limitations."  §§ 404.1520(e); 404.1545(A)(1); 404.1546(c).  The ALJ found plaintiff, at all relevant times, capable of performing a "wide range of medium work as defined at 20 CFR § 404.1567(c), with a slight limitation in performing detailed work."  AR 259.

Under the "[p]hysical exertion requirements" set forth in § 404.1567, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 CFR § 1567(c).  If someone can do medium work, [it is] determine[d] that he or she can also do sedentary and light work."  Id.  Section 404.1567(a) defined sedentary work as:

> [I]nvolv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR § 404.1567(a).  Section 404.1567(b) defines light work as:

> [I]nvolv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

20 CFR § 404.1567(b).

The ALJ found that the medical evidence and plaintiff's statements and conduct undermined her allegations of disabling

symptoms in reference to both her degenerative disc disease and mental condition.  AR 259-63.  This finding was supported by substantial evidence.

The ALJ's finding regarding plaintiff's mental condition warrants little discussion.  While Dr Yu's records indicate an impression of "depression/stress" (AR 354, 395-96), there is nothing to show that Dr Yu at any time prescribed anti-depressants or referred plaintiff to a therapist.  In fact, plaintiff testified that "a psychologist * * * would not do any good * * *" (AR 454), and the only psychological examinations on the record come from the consulting psychologist, who found plaintiff's "ability to function in a work-related setting" to be unimpaired except for a slight limitation to perform detailed work.  AR 360, 428.  The consulting psychologist also found plaintiff's mood to be "within normal limits," and her memory, concentration, fund of knowledge, insight and judgment to be "adequate."  AR 427.  The complete lack of evidence of treatment for plaintiff's adjustment disorder substantially supports the ALJ's finding that the disorder did nothing more than slightly limit plaintiff's ability to perform detailed work.

Turning to plaintiff's degenerative disc disease, plaintiff "alleged an inability to perform all work due to her pain and other symptoms."  AR 262.  Based on the medical evidence concerning plaintiff's back injury and plaintiff's statements and conduct, the ALJ found plaintiff capable of performing a wide range of medium work.  AR 259.  This finding is supported by substantial evidence.

\\

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Regarding plaintiff's medical treatment, the evidence

2 demonstrates that despite complaints of severe pain, treatment

3 consisting of, at most, Motrin, physical therapy and acupuncture

4 was at all times conservative.  In the 2004 hearing, plaintiff

5 testified that she does not take the Motrin prescribed because she

6 is "not a person that likes to take pills."  AR 442.  The record

7 also demonstrates that plaintiff declined additional physical

8 therapy sessions because it "is not the type * * * than can help

9 [her] back."  Id.  And, although there is nothing in plaintiff's

10 treating records to prove plaintiff saw a surgeon, she testified

11 that she "refused the back surgery * * *" because Dr Hood advised

12 it would cause her to become unable to walk.  AR 443.

13    A careful examination of all available Kaiser records

14 confirms the ALJ's determination that "save for intermittent

15 findings of positive straight leg raising on the left" plaintiff's

16 Kaiser records have been consistently negative for significant

17 findings.  AR 259.  Further, it does not appear that Dr Yu at any

18 time restricted plaintiff's lifting or carrying and the last time

19 Dr Yu limited plaintiff's sitting was over six years ago, in April

20 2000.

21    In addition, in June 2004 Dr Kumar found plaintiff able

22 to lift "10 pounds frequently" and sit for an unlimited amount of

23 time.  AR 343.  And, while Dr Hood did deem plaintiff "disabled,"

24 there is a lack of objective evidence to support this finding;

25 moreover, the last records from Dr Hood show plaintiff was only

26 "disabled" through July 2001, over five years ago.  AR 123, 125.

27 Moreover, while Dr Chu found plaintiff able to lift up to 25 pounds

28 occasionally and to "stand, walk and sit for 6 hours in an 8-hour

United States District Court

For the Northern District of California

workday" with the ability "to periodically alternate sitting and standing to relieve pain and discomfort," AR 365, Dr Chu submitted these findings in November 2003, almost one year prior to plaintiff's negative MRI in August 2004.  And, while Dr Klein noted plaintiff was able to lift "10 pounds frequently" and to "sit for 6 hours with appropriate breaks," AR 417, as the ALJ noted, Dr Klein based his conclusion "on a finding of possible L5 impingement" which he was unable to confirm "due to [plaintiff's] apparent intentional refusal to comply with [Dr Klein's] attempt to conduct a thorough examination."  AR 261.  Accordingly, the ALJ found Dr Klein's conclusions unsupported.  Id.

          In addition to the medical evidence, the ALJ did not find plaintiff's statements to be "particularly convincing or credible." When an ALJ assesses a claimant's credibility, "[t]hat assessment must be given great weight."  Rashad v Sullivan, 903 F2d 1229, 1231 (9th Cir 1990) (citing Hudson v Bowen, 849 F 2d 433, 434 (9th Cir 1988)).  But for an ALJ to reject a claimant's subjective statements of pain involving their alleged disability, he must provide "specific, cogent reason[s] for the disbelief."  Id. Plaintiff's testimony "may not be entirely discounted simply because [of] a lack of objective findings."  Id (internal quotations omitted).

          Here, the ALJ sufficiently documented his finding that plaintiff was not credible.  The ALJ pointed to plaintiff's contradictory statements that despite allegedly disabling pain, plaintiff can bathe and groom herself, perform household chores, walk short distances and volunteer as a track coach.  AR 434-54. This evidence, taken together with plaintiff's medical records,

United States District Court

For the Northern District of California

1  substantially supports the finding that plaintiff has the RFC to
2  perform a wide range of medium work with a slight limitation in
3  performing detailed work.

4       In his decision, the ALJ determined that plaintiff's RFC,
5  the fact that she was closely approaching advanced age and her
6  level of education mandated a finding of not disabled under Rules
7  203.21 and 203.22 of the Medical-Vocational Guidelines
8  (Guidelines).

9       Plaintiff, who concedes she was not disabled prior to
10 turning fifty, is, under the Rules, a "person closely approaching
11 advanced age," § 404.1563(d), with a "high school education and
12 above." § 404.1564(b)(4).  Given plaintiff's RFC to perform a wide
13 range of medium work, Rules 203.22 and 203.23 of the Guidelines
14 "direct a finding of 'not disabled.'"  20 CFR Part 404, Subpart P,
15 Appendix 2 §§ 203.22, 203.23.  According to the VE who testified at
16 plaintiff's hearing, plaintiff was incapable of performing her past
17 relevant work.  AR 458.

18      If a claimant is not disabled and cannot perform her past
19 relevant work, the ALJ moves on to step five and determines if the
20 claimant's RFC is such that she is capable of performing other work
21 that exists in significant numbers in the national economy.  §
22 404.1560(C).  If a claimant can adjust to other work, the ALJ will
23 find her not disabled under the Act.  § 404.1520(g).  In
24 plaintiff's hearing, the VE testified plaintiff's RFC is such that
25 she is capable of performing other work that exists in significant
26 numbers in the national economy.  Accordingly, the ALJ's
27 determination that plaintiff is not disabled under the Act is
28 upheld.

1                                    III

2          Since there was no legal error and the ALJ's decision was

3    supported by substantial evidence, plaintiff's motion for summary

4    judgment is DENIED and the government's motion is GRANTED.   The

5    clerk is directed to enter judgment in favor of defendant and

6    against plaintiff.

7

8          IT IS SO ORDERED.

9

10

11                                    _____
                                      VAUGHN R WALKER
12                                    United States District Judge